13152

ROBERTS v. JAMES *ET AL.*

(158 S. E., 689)

May, 1930.

*Mr. B. F. Martin,* for appellant,

*Messrs. Wyatt·Aiken, Morgan & Cothran,* and *J. Frank Eppes,* for respondents,

May 22, 1931.

The opinion of the Court was delivered by Mr. Justice Carter.

This action by the plaintiff, W. F. Roberts, against the defendants, Joe W. James and O. B. Hartzog, partners doing business under the name and style of the Alliance Bonded Warehouse, commenced in the Court of Common Pleas for Greenville County, August 6, 1929, is based upon a deposit of seventeen bales of cotton by the plaintiff with the defendants, and the failure of the defendants to deliver the said cotton to the plaintiff when the same was called for by him. The facts alleged by the plaintiff, which are pertinent to the question raised before this Court, stated in substance, are as follows:

The plaintiff and the defendants, James and Hartzog, are, and were at the times hereinafter mentioned, residents of the county of Greenville; that on or about the 22d of December, 1922, the said James and Hartzog were doing business in the city of Greenville, said county, under the name and style of the Alliance Bonded Warehouse, and were partners in trade under the said name and style, and doing business as a bailee, or warehouseman for cotton, receiving and storing the same for hire; that the concern was not a corporation, but that the said James and Hartzog held themselves out as doing business together as stated above. The plaintiff also alleged that the concern and business was not a bonded warehouse, though the defendants advertised and held it out to the public to be such; that on said date, December 22, 1922, the plaintiff deposited for storage in the said warehouse of the defendants seventeen bales of cotton, and at the time the defendants issued to the plaintiff their receipt for same, under an agreement to pay to the defendants certain storage charges for the cotton thus stored with the defendants. The plaintiff alleges, further, that a short time prior to the commencement of this action he called on the defendants for the delivery of his said cotton, and, to his surprise, was informed that they did not have the same in their possession, and that they failed and refused to deliver the cotton, and further alleges, "on information and belief, that the defendants have fraud-

ulently and willfully converted and appropriated the same to their own use"; that the actual value of the cotton is 22 cents per pound, but at times since it was so left with the defendants and appropriated it has been worth much more than that, to wit, 35 cents per pound; that the plaintiff placed the said cotton in storage as aforesaid and accepted the said warehouse certificates in reliance upon the representations of the defendants that the defendant Hartzog was a partner of the defendant James in the said business, and without such representations he would not have done so. The complaint contains another allegation to the effect that the defendants made contradictory statements to the plaintiff regarding the matters herein alleged after demand was made for the cotton. Actual and punitive damages were asked for in the sum of $5,000.

The defendants James and Hartzog filed separate answers. In the answer of James all of the material allegations of the complaint are denied, except as to the residence of the parties, that the plaintiff stored in said warehouse the cotton in question, and that plaintiff had demanded the delivery of the cotton to him. This defendant denied that his co-defendant, Hartzog, had any interest in the said business, and alleged "that this defendant some months ago transferred all cotton on storage to the Greenville Compress Company, and delivered to them all of the cotton he had stored which included the cotton plaintiff now claims, if it was still in this defendant's warehouse, but this defendant alleges that some time before demand was made of him by plaintiff for this cotton, that said cotton was delivered to the plaintiff by an employee of this defendant, at the time when this defendant was not at his place of business."

The answer of the defendant Hartzog also denied the material allegations of plaintiff's complaint, and specifically denied that he had any interest in the business in question, but admitted that in the fall of 1922 he stayed at the Alliance Bonded Warehouse for a few weeks helping his co-defend-

ant, James, to receive and store cotton and sign receipts for cotton so stored. Both defendants amended their answers at the trial so as to interpose the plea of the statute of limitations, alleging as follows: "As a further defense to the alleged cause of action of the plaintiff herein this defendant alleges that the alleged cause of action of the plaintiff occurred more than six years prior to the commencement of said action, and this defendant, therefore, pleads the statute of limitatons as a bar thereto."

The answers were further amended by adding the following allegation: "That if the alleged conversion did not take place at the time the property was delivered to the warehouse, then said conversion, if any, did not occur until demand for same was made by the plaintiff and a refusal to deliver."

The case was tried at the May, 1930, term of said Court before his Honor, Judge T. J. Mauldin, and a jury, resulting in an order of nonsuit on motion of defendants' counsel, at the close of the testimony offered by the plaintiff.

The motion for a nonsuit was made and based upon the ground that the undisputed facts showed the action was barred by the statute of limitations. Following the ruling of the trial Judge that a nonsuit should be granted, counsel for the plaintiff stated to his Honor: "Then we will unwillingly elect to proceed with the trial on the contract, on the cause of action on the contract. We have ample allegations in there to sustain a cause of action for contract." This motion the trial Judge overruled. Pursuant to due notice, the plaintiff has appealed to this Court from the trial Judge's order of nonsuit. The exceptions raise the following questions:

"1. Whether the trial Judge erred in holding that this action for conversion is barred by the statute of limitations, and in granting an order of nonsuit on that ground.

"2. Whether the trial Judge erred as a matter of law in holding that the plaintiff, reserving his right of appeal from the ruling of the Court that the cause for action for con-

version was barred by the statute of limitations, could not elect to proceed, and could not proceed to establish his action on contract, under the allegations of the complaint.

"3. Whether the trial Judge erred in holding that the cause of action on contract is barred by the statute of limitations, and in granting a nonsuit upon that ground."

Under the view we take of the case, it is not necessary to review the testimony adduced at the trial, but deem it sufficient to state that there was testimony' which tended to establish all of the allegations of fact contained in plaintiff's complaint. As to the first question presented, whether his Honor erred in holding that this action for conversion is barred by the statute of limitations, and in granting the nonsuit, the answer depends upon when conversion takes place under the state of facts involved herein. The plaintiff's cotton was deposited for storage in the warehouse in question December 22, 1922, and this action was not commenced until August 6, 1929, more than six years after the deposit was made. It is the contention of the respondents, and the trial Judge seems to have taken that view, that under the law the conversion took place, if there was a conversion, on the date the cotton was deposited, even though it might have been converted long afterwards, and especially do they make this contention in the absence of proof that they converted the cotton to their own use, or made way with it contrary to law, at some other time. Respondents cite several cases as supporting this position. However, the cases cited by respondents, to which we shall hereinafter refer, do not in our opinion control the case at bar. When a conversion takes place, and when a right of action accrues therefor, depends upon the conditions and surrounding circumstances under which the property involved came into possession of the person charged with the wrongful act. If a person comes into possession wrongfully (all references to property herein mean personal property), and deprives the owner of the same, under the law the conversion takes

place as of the date he came into possession. But, where he came into possession rightfully, the rule is not the same. The following quotation from Cyc. gives considerable light on the subject:

"A right of action for conversion accrues on the completion of the wrongful act.

"In case of tortious taking the statute runs from the time of such taking; in case of lawful possession and unlawful disposition, from the date of the latter; in case of lawful possession without an unlawful disposition of the goods the statute will not begin to run until the time of demand and refusal. It is immaterial whether plaintiff knew of the conversion or not, unless it was fraudulently concealed from him or he was chargeable with notice of the wrongful act." 38 Cyc., 2064, 2065.

"Ordinarily the date of demand and refusal is the date of conversion. Trover will not lie against one rightfully in possession. Such possession must first be transformed into a wrongful one by a refusal to surrender the property. Hence, demand and refusal are necessary for the maintenance of trover in all cases in which the defendant was rightfully in possession. Demand and refusal are superfluous, however, when a conversion can be otherwise shown, and evidence thereof may be omitted when any one of the following circumstances is proved; unavailability of demand, a possession in violation of one's contract, a tortious taking, a tortious levy, or attachment, acts of ownership, retention of money which it was defendant's duty to pay to plaintiff, diversion of property from the special purpose for which it was received, an unfulfilled promise to return the goods, or any distinct act of conversion in general." 38 Cyc., 2032, 2033.

In R. C. L. we find this statement of the rule:

"The purpose of proving a demand by the plaintiff and a refusal by the defendant, to deliver the property for the recovery of which trover is brought, is to show a conver-

sion, and it is the generally accepted rule that such demand and refusal are unnecessary if the act of the defendant is tortious and amounts to a conversion, regardless of whether a demand is made. * * *" 26 R. C. L., § 33, page 1122.

"* * * Thus, it has been frequently decided that a demand is necessary to support an action of trover for the conversion of personalty delivered under a contract of sale for the reason that the original posession of the buyer being by consent of the owner, and therefore, not tortious, it is necessary to change the character of his possession by demand and refusal before the seller can maintain an action for the conversion, unless it appears that the demand would be unavailing. * * *" 26 R. C. L., § 33.

For a like reason in the case at bar, the property in ■ question having been delivered to the defendants for storage, under an agreement to pay so much to the defendants for keeping the same, and to be delivered to the plaintiff upon the surrender of the certificate, issued to the plaintiff at the time the cotton was deposited with the defendants, no date being specified for the delivery, demand for the cotton should be made, and no cause of action for conversion accrued until such demand, and the statute of limitations could not begin to run until such demand was made. There could be no presumption in the case at bar that the conversion took place on the date the cotton was placed in the possession of the defendants, for the reason that at that time the defendants were rightfully in possession of the cotton.

In the case of *Parker v. Harden,* 121 N. C., 57, 28 S. E., 20, a North Carolina case, cited by respondents, it appears that the money in question in that case came into the party's hands wrongfully, and therefore it was unnecessary to make demand, and the statute of limitations began to run from the time she came into possession of the money. While there is some mention of the probability of the money getting into

her hands as trustee of her husband, attention is called to the fact that, if there was a trust relation, the trust was terminated upon his death, and therefor it can be seen that the statute began to run at that time. This case in our opinion is not controlling in the case at bar. We have a very different situation in the case at bar.

In the case of *Talbird v. Baynard,* 2 Hill, 597, cited by the respondents as supporting their position, the property involved consisted of negro slaves, bequeathed to Elizabeth Talbird, mother of the plaintiff, for her lifetime, and upon her death to her issue. The plaintiff claimed under said will. The slaves were sold to the defendant during the lifetime of the said Elizabeth Talbird by her husband, who, it seems, was acting for her. In that case a demand was made upon the defendant, but such demand was unnecessary, for the reason that upon the death of the mother of the plaintiff the defendant ceased to have any interest in the slaves, and the conversion took place at that time, and the statute of limitations began to run at that time, that is, upon the death of the mother of the plaintiff. The case, in our opinion, is not applicable to the case at bar.

We have also examined the case of *Dealy v. Lance,* 2 Speers, 487, cited by respondents. That case also involved slaves, and the questions involved are similar to the questions involved in *Talbird v. Baynard, supra.* The Court in its opinion states that the case of *Talbird v. Baynard* is exactly in point.

In the case of *Clark v. Reeder,* 1 Speers, 398, to which counsel for respondents call special attention, a lot of cotton was involved, which was wrongfully sold to the defendant. A common carrier fraudulently unloaded his boat near Charleston and carted the cotton thereon into the city and there sold it, and it is charged that the defendant purchased a part of the same, the cotton in question in the suit, and converted it to his use. This took place six years before the action was brought, and the defendant pleaded the statute

of limitations. It was contended· that the defendant had fraudulently concealed the conversion. This fact the Court held was of no avail to the plaintiff, even if established, holding that the statute of limitations began to run from the time the cotton came into the hands of the defendant and he converted it; the possession at the very outset being wrongful. The possession of the cotton in the case at bar by the defendants was not wrongful at the outset, but they came into possession rightfully. Their wrong arose by the failure to deliver when called upon. We are unable to agree with respondents as to this case being applicable to the case at bar.

The only other case cited by respondents on the question under consideration is the case of *Lenhardt v. French*, 57 S. C., 493, 35 S. E., 761, 763. The property involved in that suit was the sum of $1,800, which, it appears, was converted. The prevailing opinion in this case was written by Chief Justice McIver, concurred in by Mr. Justice Jones. The party who got possession of the money in question, instead of turning it over to the executors of a certain estate, who were entitled to receive the same, secretly held the same. It seemed to be conceded by the parties involved in that suit that the conversion took place at the time the money should have been turned over to the executors, and therefore the plea of the statute of limitations was good, unless prevented from running by reason of the fact, as alleged, that the intestate, referred to in the suit, concealed the fact that the money had been converted; it being the contention of the party seeking to recover the money in question that the following provision of the Code was applicable: "Any action for relief on the ground of fraud, in cases which, heretofore, were solely cognizable by the Court of Chancery, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Code Civ. Proc., 1922, § 331, Subd. 6.

As pointed out by Chief Justice McIver the section only applies in a case which prior to the Code was "solely cognizable by the Court of Chancery," and is therefore, not applicable. However, there is nothing stated in the opinion in that case which is not in harmony with the view we have expressed herein and set forth in the authorities we have cited.

In the case at bar, the plaintiff having deposited his cotton with the defendants, to be stored in their warehouse and received a certificate therefor, under contract to pay for the storage, and no date being named when delivery should be made, had the right to rely on his contract and to expect the cotton to be kept in storage until called for by him. The plaintiff was not in position to establish when the defendants made way with the cotton, or converted it to their use, if such was done, and to require him to do this would, in our opinion, be unreasonable under the facts of this case. In our opinion plaintiff's right of action did not, under the facts of this case, accrue until after he made demand for the cotton and the defendants refused to deliver the same.

Furthermore, attention is called to the fact that there was evidence in the case to the effect that one of the defendants, Jams, was claiming, within the six years prior to the bringing of the action, that he was still caring for the property of the plaintiff, and that he had, within the six years, delivered it to an unauthorized party. There was some testimony to the effect that at least one of the defendants claimed that they had delivered the cotton to a party not entitled to receive it two or three years after the cotton was deposited with the defendants.

In our opinion the trial Judge was in error in granting the nonsuit on the ground that the action was barred by the satute of limitations. Having reached this conclusion, it is unnecessary to consider the other questions raised by the exceptions.

It is the judgment of this Court. that the order of non-suit be reversed, and that the cause be remanded for trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and STABLER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.